Richard W. Ward
Texas Bar No. 20846350
6860 N. Dallas Parkway
Suite 200
Plano, TX 75024
Applicant for counsel for debtor
    in possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IN RE:

| | |
|---|---|
| WINMAR PIZZA, L.P. | Case No. 09-33027-BJH-11 |
| Debtor in Possession | (Chapter 11) |

**EMERGENCY MOTION FOR AUTHORIZATION TO MAKE INTERIM
PAYMENTS TO MARWIN MANAGEMENT, LLC FOR
SERVICES RENDERED TO DEBTOR AND TO PAY PRE-PETITION WAGES
AND WAGE RELATED CLAIMS**

THE DEBTORS HAVE REQUESTED EMERGENCY CONSIDERATION OF THIS MOTION AND HAVE REQUESTED THAT A "FIRST DAY" HEARING BE HELD ON THIS MOTION AT THE COURT'S EARLIEST CONVENIENCE.  IF THE COURT IN FACT SETS THIS MOTION FOR AN EMERGENCY "FIRST DAY" HEARING, ONLY YOUR ATTENDANCE AT THE HEARING IS NECESSARY TO PRESERVE YOUR RIGHTS.  NO WRITTEN RESPONSE NEED BE FILED.

TO: THE HONORABLE BARBARA J. HOUSER, UNITED STATES BANKRUPTCY JUDGE:

    COMES NOW Winmar Pizza, L.P. ("Winmar") and its affiliated debtors and debtors-in-possession (together with Winmar, the "Debtors")[1] and file this who file this Emergency Motion for Authorization to Make Interim Payments to Marwin

---

[1] The Debtors include Pizza Foods of Texas, L.P.; Pizza Partners of Florida, L.P.; Pizza Partners of Indiana, L.P.; Pizza Partners of Maryland; Pizza Partners of Ohio, L.P.; Pizza Partners of South Carolina, L.P.; TEG Pizza Partners Holdings, L.P.; TEG Pizza Partners of Texas, L.P.; Pizza Partners of West Virginia, Limited Partnership; and Pizza Partners of Cincinnati, L.P.

**Motion to Pay Marwin Management, Page 1 of 11**

Management, LLC for Services Rendered to Debtor and to Pay Pre-Petition Wages and Wage Related Claims and respectfully represents:

1. On May 15, 2009, Winmar filed a voluntary petition for relief under chapter 11 of title 11, United States Code. On June 28, 2009 (the "Petition Date"), the debtors other than Winmar filed their respective voluntary petitions for relief (collectively, the "Cases") under chapter 11 of title 11, United States Code (the "Bankruptcy Code"). This is a core proceeding under 28 U.S.C. § 157(2)(A) and (M).

**Nature of Events Constituting Emergency**

2. The Debtors now operate fifty-four (54) CiCi Pizza restaurants, as franchisee, under franchise agreements between the Debtors and CiCi Enterprises or its affiliates.

3. As described more fully herein, all of the management level employees who work at restaurants owned by the Debtors are not employees of the Debtors, but are employees of Marwin Management, LLC ("Marwin"). In the months leading up to the filing of this case, the Debtors reimbursed Marwin for the salaries and benefits payable to such persons. The reimbursement procedures are described herein. Additionally, the Debtors have no employees who perform traditional back office functions such as administration, payroll services, accounts payable and financial accounting; all such services are provided for the Debtors by persons who are employees of Marwin. Prior to the filing of the various bankruptcy cases, the Debtors each reimbursed Marwin for the actual costs incurred by Marwin in proportion to the number of restaurants operated by each debtor to the total number of restaurants operated by all of the Debtors. Marwin did not make any profit, under its agreements with the Debtors.

4. The Debtors have no employees who can perform the duties of the persons employed by Marwin. Without the continued services of those persons, the Debtors cannot continue operations and may be in violation of franchise agreements to which the Debtors are franchisees. The Debtors cannot reasonably replace the persons employed by Marwin with persons with similar skills and training without a massive disruption of the Debtors' operations of their restaurants.

5. Most of the persons for whom the Debtors seeks to make payments under this motion cannot continue to work at restaurants owned by the Debtors without being paid for such work.

**Description of Persons Employed by Marwin who Provide Services to the Debtors**

6. Persons who provide services to the Debtors fall into five general categories:

    a. Hourly employees of the Debtors who work at the restaurant in non-managerial capacity;

    b. Persons who are employed by Marwin who work primarily at a particular a restaurant of a Debtor;

    c. Persons who are employed by Marwin who work in a geographic region, such as the Houston region; and

    d. Persons who are employed by Marwin who work in all geographic regions;

    e. The person employed by Marwin who work in the offices of Marwin in Dallas, Texas and provide all accounting, administrative, and financial services for the Debtors.

7. The Debtors entered into agreements with Marwin Management, LLC, a Texas limited liability company. Under the Marwin Agreements, Marwin provided a variety of management and "back office" services, including bookkeeping, accounts payable and other services. Under the Marwin Agreements, the Debtors were to pay Marwin between one and three percent of gross sales per restaurant, plus $30,000 annually per restaurant. When the financial performance of the restaurants did not generate sufficient money to pay bills, bank debt and the payments to Marwin, Marwin and the Debtors orally agreed to modify the Marwin Agreements to provide that the Debtors would pay Marwin an amount that was each Debtor's pro-rata share of Marwin's expenses, including the costs of employees and their benefits.

8. After the oral amendment of the Marwin Agreements, the Debtors each made proportionate reimbursement to Marwin for the costs of incurred by Marwin. the costs of persons in category 6.b by paying all of such persons salary plus a payment of a pro-rata share of extra shift pay paid to a person listed in category 6.b. The pro-rata payment was based on each Debtor's pro rata share of restaurants in a geographic area. The Debtors propose that this arrangement be approved by this Court and continue post-petition.

9. Prior to the filing of this case, the reimbursement from the Debtors to Marwin for persons in category 6.c, including reimbursement of phone and automobile expense was based on a Debtor's prorata share of restaurants in a geographic area.

10. The Debtors propose to reimburse the persons in category 6.d by paying the ratio of each Debtor's restaurants to all of the Debtors' restaurants, since these persons responsibilities extend to all restaurants.

11. An itemization of payments in category 6.e is attached hereto and incorporated herein as Exhibit "A".

12. After the oral amendment of the Marwin Agreement, the Debtors did not pay Marwin any mark up or increase on the Debtors' pro-rata reimbursement of payments to Marwin employees in categories 6.b, 6.c., 6.d., and 6.e.

13. For purpose of explaining the oral rather than written amendment of the Marwin Agreement, some of the member and managers of Marwin are and have been members or managers of TEG Pizza GP, LLC, the general partner of the Debtors.

14. The Debtors do not employee any managerial personnel. The categories of service provided by such persons are listed in paragraph 6. If the persons identified in paragraph 6 cannot perform their duties with respect to the Debtors, the Debtors will not be able to operate. Furthermore, the performance of the duties of the persons in categories 6.b, 6.c, 6.d, and 6.e are necessary for the Debtors to satisfy their obligations in Section VI, C., D., E., and F of the franchise agreements with CiCi. Additionally, the inability of the Debtors to pay Marwin for the services of persons in categories 6.b, 6.c, 6.d, and 6.e may violates some of the operating requirements in section VII of the franchise agreements with CiCi, particularly subsections (E)(7) and (9).

15. Replacement of the persons identified in categories 6.b, 6.c, 6.d, and 6.e is not economically feasible, since the loss of such persons would virtually erase institutional management memory and replacement of such persons would take time, during which operations of the Debtors would deteriorate, if not collapse.

16. If the Debtors cannot properly perform their duties under the franchise agreements, CiCi may be able to obtain termination of the franchises after hearing by this

**Motion to Pay Marwin Management, Page 5 of 11**

court. Loss of franchise rights would immediately harm the bankruptcy estates since the franchise agreements are the most valuable assets of the Debtors.

17. If Marwin cannot receive reimbursement from the Debtors for the salaries, benefits, and expenses payable to the persons in categories 6.b, 6.c, 6.d, and 6.e or incurred by Marwin in connection with persons in such categories, Marwin will not be able to pay such persons to perform services for the Debtors or continue to provide services to the Debtors.

**No Assumption or Rejection, if Marwin Agreements Are Executory Contracts**

18. At this time, the Debtors have not determined whether the Debtors will assert that the Marwin Agreements are executory contracts pursuant to 11 U.S.C. § 365; however, the Debtors expressly state that to the extent the Debtors or any entity in this case ultimately asserts that the Marwin Agreements are executory contracts that nothing in this motion or any action taken after this motion may be approved by this Court shall in any way constitute an assumption of the Marwin Agreements. To the extent, if any, that the Marwin Agreements are executory contracts, the Debtors do not seek authorization to assume or reject the Marwin Agreements through this motion.

19. As part of their overall compensation, Employees are also entitled to receive a certain number of vacation days each year. Employees earn vacation days each year, depending upon the segment of the Debtors' business, and the Employee's position and length of service with the Debtors. Accrued, but unused vacation days are paid out to all Employees in each business unit upon termination of their employment with the Debtors. The Debtors estimate that, as of the Petition Date, total accrued but unpaid

vacation liability is approximately $23,700,000, most of which will be satisfied by use of vacation days by Employees, rather than cash outlays by the Debtors.

**Payment of Pre-petition Wage Claims**

20. Each of the Debtors employ an number of hourly persons who perform the essential labor necessary to prepare and serve meals at the restaurants and to clean the restaurants.

21. The Debtors' ability to preserve their businesses and successfully reorganize is dependent on the continued enthusiasm, services and expertise of their Employees. Due to the disruption and uncertainty that typically accompanies a chapter 11 filing, the Debtors believe that the morale of their Employees may be adversely affected.

22. In addition, if the Debtors fail to pay the Prepetition Employee Obligations in the ordinary course, their Employees will suffer extreme personal hardship and, in some cases, may be unable to pay their basic living expenses. Such a result would have a highly negative impact on employee morale and likely would result in unmanageable turnover, thereby resulting in immediate and irreparable harm to the Debtors and their estates. By this Motion, the Debtors seek authorization to pay pre-petition wages of employees.

23. Hourly employee wages are paid biweekly on Fridays. Accordingly, the Debtors made their usual payroll on June 26, 2009 to Employees paid bi-weekly. The next payroll date July 10, 2009 and includes compensation for services rendered from June 21, 2009 through July 5, 2009 for employees paid bi-weekly.

24. The Debtors request authorization to pay the pre-petition portion of payroll. Such amounts are included in the items listed on Exhibit A, attached to the Debtors' motion to use cash collateral.

25. The Debtors, operating their businesses as debtors in possession under Bankruptcy Code sections 1107(a) and 1108, are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." I*n re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a Chapter 11 debtor-in-possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id*.

26. Courts have noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.*; *see also In re Mirant Corp., et al.*, 296 B.R. 427, 429-30 (Bankr. N.D. Tex. 2003) (allowing debtors to continue their respective businesses). The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.* The Court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty: First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim. *Id.* at 498.

27. The proposed payments of the employees should be authorized under Bankruptcy Code section 105 which authorizes this Court to "issue any order . . . necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). For the reasons set forth herein, and in light of the critical need for the Debtors to preserve the value of their businesses in order to effect a successful reorganization through, among other things, preservation of the Debtors' workforce and its morale, payment of the wages and benefits as requested herein is proper in accordance with Bankruptcy Code section 105.

28. Payment of the Prepetition Employee Obligations is further supported by the "doctrine of necessity." The doctrine of necessity is a well-settled doctrine that permits a bankruptcy court to authorize payment of certain prepetition claims prior to the completion of the reorganization process where the payment of such claims is necessary to the reorganization. *See In re Just for Feet, Inc.,* 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment); *CoServ*, 273 B.R. at 497 (stating willingness "to apply the doctrine of necessity . . . in appropriate cases."); *see also In re Babcox & Wilcox Co.*, 274 B.R. 230, 256 n. 208 (Bankr. E.D. La. 2002) (noting that debtors had been "authorized . . . to pay many of their [non-asbestos] debts . . . under . . . 'doctrine of necessity'") (citing *NextWave Pers. Commc'ns Inc. v. F.C.C.*, 254 F.3d 130, 136 (D.C. Cir. 2001)); *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[T]he court can permit pre-plan payment of pre-petition obligation when essential to the continued operation of the debtor."). Courts have recognized the applicability of the doctrine of necessity with respect to the payment of prepetition

employee compensation and benefits. *See e.g. Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.*), 80 B.R. 279, 285-89 (S.D.N.Y. 1987) (under "necessity of payment doctrine, it is appropriate for bankruptcy court to defer to Debtors' business judgment in permitting payment of certain workers' compensation claims); *In re Ionosphere Clubs, Inc.*, 98 B.R. at 176 ("This rule recognizes the existence of the judicial power to authorize a debtor in a reorganization case to payment of a prepetition claim where such payment is essential to the continued operation of the debtor.").

WHEREFORE the Debtors requests that this court authorize the Debtors to reimburse Marwin Management, LLC according to the terms stated in this motion and to pay the pre-petition wages owed to employees and to make such payments from cash collateral and for such other and further relief as is just and proper.

        Respectfully submitted,

        <u>/s/ Richard W. Ward</u>
        Richard W. Ward
        Texas Bar No. 20846350
        6860 N. Dallas Parkway, Suite 200
        Plano, TX 75024
        Telephone: 214-220-2402
        Facsimile: 972-499-7240
        Proposed Attorney for the Debtor-in-possession