Richard W. Ward
Texas Bar No. 20846350
6860 N. Dallas Parkway
Suite 200
Plano, TX 75024
Counsel for debtors
    in possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IN RE:

| | |
|---|---|
| WINMAR PIZZA, L.P., *et al.* | Case No. 09-33027-BJH-11 |
| Debtors in Possession | (Chapter 11) (Jointly Administered) |

**MOTION FOR ORDER (I) AUTHORIZING AND SCHEDULING PUBLIC AUCTION FOR THE SALE OF DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES, (II) APPROVING BID PROCEDURES (III) SETTING PROCEDURES FOR ASSUMPTION OR REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND NON-DEBTOR PARTIES TO STATE DEFAULTS AND CURE AMOUNTS AND (IV) AUTHORIZATION TO SELL ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES PURSUANT TO 11 U.S.C. §363 (f) WITH ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS <u>AND UNEXPIRED LEASES</u>**

       A HEARING WILL BE CONDUCTED ON THIS MATTER ON AUGUST 4, 2009, AT 3:30 P.M. CDT IN THE COURTROOM OF THE HONORABLE BARBARA J. HOUSER, CHIEF UNITED STATES BANKRUPTCY JUDGE FOR THE NORTHERN DISTRICT OF TEXAS, AT 1100 COMMERCE STREET, 14TH FLOOR, DALLAS, TEXAS 75242.
       IF YOU OBJECT TO THE RELIEF REQUESTED HEREIN, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-THREE DAYS FROM THE DATE THAT YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON COUNSEL FOR THE DEBTORS; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

TO THE HONORABLE BARBARA J. HOUSER, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Winmar Pizza, LP ("Winmar") and its affiliated debtors and debtors-in-possession (together with Winmar, the "Debtors")[1] and file this Motion for Order (I) Authorizing and Scheduling Public Auction for the Sale of Debtors' Assets Free and Clear of All Liens, Claims, and Encumbrances, (II) Approving Bid Procedures (III) Setting Procedures for Assumption or Rejection of Executory Contracts and Unexpired Leases and Non-Debtor Parties to State Defaults and Cure Amounts and (IV) Authorization to Sell Assets Free and Clear of Liens, Claims And Encumbrances Pursuant to 11 U.S.C. §363 (f) with Assumption and Assignment of Executory Contracts and Unexpired Leases and respectfully represents:

**I.     Background**

1. Winmar filed a voluntary petition under chapter 11 of Title 11, United States Code, on May 15, 2009. On June 28, 2009 (the "Petition Date"), the debtors other than Winmar, filed their respective voluntary petitions for relief (collectively, the "Cases") under chapter 11 of title 11, United States Code (the "Bankruptcy Code"). This Court ordered joint administration of the cases.

2. This is a core proceeding under 28 U.S.C. § 157(2)(A) and (M).

3. Restaurants that were formerly operated by Pizza Partners of West Virginia, Limited Partnership and Pizza Partners of Cincinnati, L.P. are now operated by persons or entities that offered to buy the locations, but the sales have not been consummated and are, therefore, executory contracts.

4. The Debtors annual sales exceed $40,000,000.

---

[1] The Debtors include Pizza Foods of Texas, L.P.; Pizza Partners of Florida, Limited Partnership; Pizza Partners of Indiana, L.P.; Pizza Partners of Maryland, L.P.; Pizza Partners of Ohio, Ltd.; Pizza Partners of South Carolina, L.P.; TEG-Pizza Partners Holdings, L.P.; TEG Pizza Partners of Texas, L.P.; Pizza Partners of West Virginia, Limited Partnership; and Pizza Partners of Cincinnati, L.P.

5. The Debtors are operated by Marwin Management, LLC ("Marwin"). The details of the operation are detailed in Emergency Motion for Authorization to Make Interim Payments to Marwin Management, LLC for Services Rendered to Debtor and to Pay Pre-Petition Wages and Wage Related Claims. At this time, Marwin does not make a profit under the operating agreements, but receives reimbursement from the Debtors on a pro rata basis of the costs incurred by Marwin in operating the Debtors.

6. Commencing with substantial increases in gasoline prices in the summer of 2008, revenues at the restaurants operated by the Debtors declined due to decreased consumer spending. The Debtors have engaged in a number of actions to increases sales, but the sales increases have not reached a level that will allow the Debtors to pay Frost.

7. The Debtors, except for Pizza Partners of Indiana, L.P., ("PP Indiana") are indebted to The Frost National Bank ("Frost" or the "Bank") as guarantors in the amount of $19,000,000. The debt of the Debtors to Frost is secured by a lien on all of the assets of the Debtors. The debt to Frost arose from the consolidation of loans from Frost to the Debtors into a loan from Frost to Pizza Master Holding, Inc. in connection with the consolidation of ownership interests in the Debtors into Pizza Master Holdings, Inc. The Debtors, except PP Indiana, are in default under agreements with Frost and the indebtedness owed to Frost has been accelerated and is due and payable.

8. The Debtors do not own the locations of any restaurant, but lease the space occupied by the restaurants. Generally, the lessor for each location on which a restaurant is located are separate legal entities.

9. The Debtors owe a number of obligations to CiCi and affiliates or insider of CiCi under the franchise agreements between the Debtors and CiCi. The obligations are in three

general categories: payment for goods and services used in the operations of the restaurants; royalty fees; and marketing fees and reimbursements.[2] The Debtors are generally current on the first two obligations, but approximately $840,000 of marketing payments owed to CiCi have been deferred.

## II. Sales Matters

10. As part of the reorganization process, the Debtors retained Advanced Restaurant Sales ("ARS") as sales broker to aid the Debtors in advertising and marketing for sale, lease, or other disposition portions of the Debtors' businesses and assets (the "Assets"). ARS is currently actively marketing the Debtors' Assets and recommends that the Debtors sell the Assets at a public auction (the "Auction"). The Debtors and Frost entered into an agreed order for use of cash collateral under which the Debtors agreed to conduct a public auction for the sale of the assets of the Debtors according to the general terms and deadlines stated in the Bid Procedures attached hereto as Exhibit "A".

11. ARS has marketed the Assets through numerous channels, including directly targeting potential buyers by sending them promotional materials and making calls to the same to gauge interest. Several parties have expressed their interest in purchasing the Assets, and it is probable that a stalking horse bidder will be designated prior to the Auction date.

12. In order for the Debtors' Assets to be sold for the highest and best price, the purchaser will have acquire the rights of the Debtors under the franchise agreements with CiCi and the rights of the Debtors under leases of locations at which the restaurants are located. Accordingly, at the time of the sale of the Assets, the Debtors will seek to assume the franchise agreements and unexpired store leases and assign the same to the purchaser. The assumption and assignment of the Debtors rights under franchise agreements and leases will require the

---

[2] CiCi has asserted other claims under the franchise agreements as well.

**Motion Regarding Bid Procedures and Related Matters, Page 4 of 11**

establishment of amounts to cure defaults, which will require the non-debtor parties to executory contracts and unexpired leases to state amounts that are claimed as necessary to cure defaults that are alleged under such contracts and leases.

13. To facilitate receiving the highest and best price for the Assets, Debtors (and Frost) believe, and have agreed, that the Assets should be sold through an auction process. The Debtors intend to first have the Court approve the Bid Procedures Motion, then to conduct an auction of the Assets, and finally to have the Sale approved so that the transfer of the Assets to the Successful Bidder may be completed and the Sale closed.

### III. Relief Requested

14. By this Motion, the Debtors seek the entry of an order or orders:

   a. authorizing and scheduling a public auction on August 20, 2009, or such other date as the Debtors and Frost may agree upon (the "Auction") for the sale of the Assets, free and clear of all liens, claims, encumbrances, and interests (the "Sale") after subsequent approval by this Court at the Sales Hearing;

   b. approving bid procedures substantially in the form attached as Exhibit A (the "Bid Procedures"), for the submission of offers for the Assets; and

   c. Mandate that on or before August 14, 2009, all non-debtor parties to executory contracts and unexpired leases file a written statement of (i) all defaults under the contract between such non-debtor party and the Debtors and (ii) the amount of monetary compensation requested by such non-debtor parties for the cure of each default.

d. Establish procedures for a resolution on or before the date of the Sales Hearing of any disputes regarding the defaults claimed by the non-debtor parties or the amounts that the non-debtor parties allege are required to compensate such non-debtor parties for the alleged defaults.

The relief requested by the Debtors in this Bid Procedures Motion is predicated upon 11 U.S.C. § 105, 363 and 365.

## IV. Bid Procedures

15. Pursuant to Federal Rule of Bankruptcy Procedure 6004, a sale of a debtor's assets or other property may be accomplished through public or private auction. The Debtors believe that a public sale will be the most fair, and transparent method for selling the Assets, and will generate bidding competition which will serve to increase price received by the Debtors. The Debtors therefore seek authority to conduct a public auction of the Assets.

16. As more specifically enumerated in the Bid Procedures, attached hereto as Exhibit A, the Debtors request that the Court give them authorization, in accordance with the Bid Procedures, to solicit Qualifying Bids for the Assets. Debtors will accept bids for the purchase of the Assets through ARS and the Debtors' counsel, Richard W. Ward, 6860 N. Dallas Parkway, Suite 200, Plano, TX 75024. Each Bid must be submitted in writing to the parties listed in the attached Bid Procedures, and must meet all other requirements listed therein to be deemed a Qualifying Bid.

17. Each party wishing to submit a Qualifying Bid may have access to certain confidential information, upon the execution of a confidentiality agreement, which will enable it to conduct reasonable due diligence. The potential Qualifying Bidder may share such information with its professionals, agents, advisors, and/or counsel, but the prospective

Qualifying Bidder shall be responsible for any/all damages caused to Debtors and/or Company by the disclosure of such confidential information, either by itself, or by any of its professionals, agents, advisors, or counsel.

18. After the Bid Deadline has passed, and Debtors have received all bids deemed Qualifying Bids, the Debtors plan to hold the Auction, at which all Qualifying Bidders, including any designated Stalking Horse Bidder, may compete for the purchase of the Assets. The Auction will commence with an announcement of the highest and/or best offer for the purchase of the Assets, which may be a designated Stalking Horse Bid. If multiple Qualifying Bids are received for the Assets, all Qualifying Bidders shall have the right to improve their respective Bids at the Auction, subject to overbid increments of $25,000.00.

19. At the conclusion of overbidding at the Auction, Debtors will determine what is the highest and/or best offer for the Assets, and will name both a winning bidder (the "Successful Bidder"), and a back-up bidder (the "Successful Back-Up Bidder"). The Successful Bidder's Qualifying Bid will be submitted to the Court for approval at the hearing to approve the Sale Motion (the "Sale Hearing"), and upon Court approval, the Successful Bidder will be deemed the Purchaser of the Assets (the "Purchaser"). Notwithstanding Debtors' acceptance of a Qualifying Bid as the Successful Bid or Successful Back-Up Bid, Debtors may designate Qualifying Bidders which otherwise submitted Qualifying Bids as additional Successful Back-Up Bidders, as the Debtors see fit, so that any of the bids submitted by the same may be accepted and consummated without further Order of the Court in the event a sale to the Successful Bidder or Successful Back-Up Bidder is either not approved by the Court or not consummated at Closing.

20. Should the Purchaser be an entity other than any previously designated Stalking Horse Bidder, and that entity consummates the sale of the Assets at Closing, then the Stalking

Horse Bidder shall be entitled to a break-up fee in the amount of up to three percent (3%) of the Stalking Horse Bid amount (the "Break-Up Fee"), which shall reimburse the Stalking Horse Bidder for all damages or loss occasioned by its unsuccessful purchase effort including reasonable expenses, legal and accounting fees, and lost opportunity costs.  Such Break-Up Fee shall be due and payable to the Stalking-Horse Bidder at Closing, and shall be paid by the Successful Bidder.

21. Debtors and the Purchaser shall use commercially reasonable efforts to consummate the Court-approved sale of the Assets, including the payment in full of the purchase price in readily-available funds, not later than three (3) days after the Sale Hearing.  Debtors shall return the Deposits of all Qualifying Bidders, other than the Successful Bidder, the Successful Back-Up Bidder, and any designated Additional Successful Back-Up Bidders within two (2) days after the Auction, and shall return the Deposit to each Qualifying Bidder that (i) has not previously received its Deposit back, and (ii) is not the Purchaser, within a reasonable time after the Closing.

22. Pursuant to the Bid Procedures, the Debtors seek to conduct the Auction according to a schedule that is designed to provide prospective bidders with enough time to (a) conduct due diligence and (b) prepare their bids.  As such, the Bid Procedures preserve and maximize value for the benefit of Debtors' estates and creditors.  When bidding for the Assets, all such bidders must abide by the Bid Procedures.  Debtors reserve the right, in their exclusive business judgment, but after consultation with Frost to (i) impose, at or prior to the Auction, additional terms and conditions on a sale of the Assets consistent with the Bid Procedures Order; (ii) adjourn the Auction at the Auction; (iii) adjourn the Sale Hearing in open court without further notice; (iv) withdraw from the Auction all or a portion of the Assets at any time prior or

during the Auction or cancel the Auction; (v) reject all Qualifying Bids if no bid is, in Debtors' reasonable business judgment, for fair and adequate consideration; and (vi) modify the Bid Procedures, including, without limitation, any and all processes and rules regarding conduct of activities at the Auction, including, among other things, the manner in which bids are submitted and the permitted increments of such bids.

23. The Debtors believe that the Auction and proposed Bid Procedures will promote active bidding from seriously interested parties and will identify the highest and/or best offer available for the Assets. The proposed Bid Procedures will allow the Debtors to conduct the Auction in a fair and efficient manner that will encourage participation by financially capable bidders who demonstrate the ability to consummate the purchase of the Assets. The Debtors believe that the Bid Procedures are sufficient to encourage bidding for the Assets, consistent with other procedures previously approved by this Court, and appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy case.

**V.     Executory Contracts and Unexpired Leases**

24. The sale of the Assets requires the assumption and assignment of (a) the franchise agreements between the Debtors and CiCi and (b) the unexpired leases of the spaces at which the restaurants of the Debtors are operated. Assumption of these matters requires the cure of all defaults and adequate assurance by the buyer of future performance under the contracts.

25. The Debtors need to establish procedures to require the non-debtor parties to executory contracts to define all alleged defaults and to quantify the amount of money that the non-debtor parties assert must be paid to cure the defaults. The Debtors and Frost need quantification of the potential cure amounts prior to the Sale Hearing to determine how to address issues raised by the potential cure claims asserted by non-debtor parties.

26. On or before August 14, 2009, non-debtor parties to executory contracts and unexpired leases should file in this case, and serve via email and regular mail copies of the filed documents on counsel for the Debtors and counsel for Frost, Clay M. Taylor, Kelly, Hart & Hallman, Kelly Hart & Hallman LLP, 201 Main Street, Suite 2500, Fort Worth, TX 7610, Email: clay.taylor@khh.com, written statements of, with supporting documentation for, (a) all defaults alleged by such parties and (b) any monetary amounts that such non-debtor party asserts are necessary to cure such defaults and/or compensate the non-debtor party for such defaults.

27. At the Sales Hearing, the Debtors request approval of assumption of executory contracts and unexpired leases that are designated by the Debtors and the assignment of such executory contracts and unexpired leases to the Purchaser.

## VI. Request for Authorization to Sell the Assets

28. The Debtors request that this Court authorize the sale of the Assets pursuant to 11 U.S.C. §363(f) free and clear of liens, claims, and encumbrances at the Sales Hearing.

## VII. Reservation of Credit Bid Rights

29. Frost holds a security interest in the Assets of the Debtors. Before the date of the Sales Motion, the time for parties in interest to object to the validity and priority of the liens and claims asserted by Frost will have expired and (a) no challenge will have been asserted or (b) challenges will have been filed. Subject to the provisions of 11 U.S.C. § Frost reserves all rights under 11 U.S.C.§ 363(k) to "credit bid" the amounts owed to Frost.

WHEREFORE, the Debtors respectfully request that the Court enter an order (a) granting the relief requested in this Bid Procedures Motion; (b) authorizing and scheduling a public auction on August 20, 2009, for the Sale of the Assets; (c) approving the proposed Bid Procedures; (d) scheduling a hearing on the Sales Motion for September 2, 2009, and at such

hearing approve the sale of the Assets pursuant to 11 U.S.C. §363(f) free and clear of liens, claims or encumbrances; (e) order all non-debtor parties to executory contracts or unexpired leases to file written statements of, with supporting documentation for, (i) all defaults alleged by such parties under the executory contract or unexpired lease and (ii) any monetary amounts that such non-debtor party asserts are necessary to cure such defaults and/or compensate the non-debtor party for such defaults; (f) at the Sales Hearing approve the assumption of those executory contracts and unexpired leases designated by the Debtors and the assignment of the designated executory contracts to the Purchaser; and (g) such other and further relief as is just and proper.

Respectfully submitted,

/s/ Richard W. Ward
Richard W. Ward
Texas Bar No. 20846350
6860 N. Dallas Parkway, Suite 200
Plano, TX 75024
Telephone: 214-220-2402
Facsimile: 972-499-7240
Email: rwward@airmail.net
Attorney for the Debtors-in-possession

### Certificate of Conference

I certify that the foregoing procedures and relief were discussed in general terms with Clay M. Taylor, counsel for The Frost National Bank in connection with this motion and as terms for the use of cash collateral as stated in the order authorizing the use of cash collateral and he is in agreement with the concepts of this motion, but not all of the details.

/s/ Richard W. Ward
Richard W. Ward

### Certificate of Service

I certify that this motion will be served on all parties in interest in this case on July 10, 2009. After service a detailed certificate will be filed listing all persons served.

/s/ Richard W. Ward
Richard W. Ward