

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described**.

United States Bankruptcy Judge

**Signed November 5, 2009**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| WINMAR PIZZA, L.P., et. al.[1] | § | Case No. 09-33027-BJH-11 |
| | § | |
| Debtors-in-Possession | § | (Joint Administration Pending) |

**FINAL ORDER GRANTING MOTIONS FOR AUTHORIZATION
TO USE CASH COLLATERAL**

On September 2, 2009, came on for final consideration the motions for authorization to use cash collateral filed initially by Winmar Pizza, L.P. ("***Winmar***") and thereafter by the remaining Affiliated Debtors (the "***Cash Collateral Motions***"). Based on rulings of this Court, the motions to use cash collateral were granted as interim orders and the Debtors were to provide notice to all creditors of deadlines to object to the liens or claims of The Frost National Bank (the "***Lender***" and "***Frost***") before this Court would consider entry of the orders as final orders. On

---

[1] The remaining debtors and debtors in possession include: Pizza Foods of Texas, L.P.; Pizza Partners of Cincinnati, L.P.; Pizza Partners of Ohio, Ltd.; Pizza Partners of Maryland, L.P.; Pizza Partners of South Carolina, L.P.; TEG Pizza Partners of Indiana, L.P.; Pizza Partners of West Virginia, Limited Partnership; TEG Pizza Partners of Texas, L.P.; Pizza Partners of Florida, Limited Partnership; and TEG Pizza Partners Holdings, L.P.

September 5, 2009, the Debtors served the Notice of Deadline for Filing Objections on all parties in interest in the jointly administered cases. No objections were filed to the liens or claims asserted by Frost on or before October 21, 2009. The Cash Collateral Motions seek entry of a final order (i) authorizing the Debtors to use cash collateral (as defined in the Bankruptcy Code) on a final basis for the period of October 21, 2009 through December 27, 2009 as to the Debtors pursuant to § 363(c) of the Bankruptcy Code and Fed. R. Bankr. P. 4001(b)(2), as set forth herein and in accordance with the Budget referenced herein as **Docket Entry Number 208** and as may be subsequently modified or extended by the agreement of the Lender and the Debtors (the "***Budget***"); and (ii) granting as adequate protection first priority liens and security interests and superpriority claims pursuant to §§ 361, 363(e) and 507(b) of the Bankruptcy Code.

The Court has considered the Cash Collateral Motion, the arguments of counsel, and having been advised that the Debtors and Frost have agreed to the use of the cash collateral on the terms and conditions set forth in this Order. Therefore, after due deliberation and consideration,

**THE COURT HEREBY FINDS AND CONCLUDES:**

A.     Winmar, the initial Debtor's Chapter 11 case, was commenced by the filing of a voluntary petition on May 15, 2009 (the "***Petition Date***") under chapter 11 of Title 11, United States Code (the "***Bankruptcy Code***"). The Affiliated Debtors filed for relief on June 28, 2009. Debtors are debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No committee of unsecured creditors has been appointed. No request has been made for the appointment of a trustee or examiner. As used in this order "Debtors" shall mean Winmar and all Affiliated Debtors collectively unless the context applies to one or more, but not all, of the abovenamed debtors.

B. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (M). The statutory predicates for the relief sought herein are §§ 105, 361, 362, 363 and 507 of the Bankruptcy Code and Bankruptcy Rule 4001(b). Venue of this chapter 11 case and Cash Collateral Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C. Prior to April 2007, Frost loaned monies to the Debtors and was a secured creditor of the Debtors. In April 2007, Debtors' debt owed to Frost, along with debts owed by various other partnerships owed to Frost, was paid with the proceeds of a $19,000,000 term loan (the "*Loan*") from Frost to the Debtors, each of whom are primary obligors and guarantors for the full amount of the Loan. Frost holds a perfected security interest in all or substantially all of the Debtors' assets, including, without limitation, all accounts, inventory, general intangibles, and the cash proceeds thereof (collectively the "*Pre-Petition Collateral*"). The proceeds of the Pre-Petition Collateral constitute cash collateral as such term is defined in 11 U.S.C. § 363 (the "*Cash Collateral*"). The liens of Frost are first priority liens. Debtors are not aware of any other creditor holding material interests in the Pre-Petition Collateral or Cash Collateral.

D. This Court has approved several interim orders and budgets authorizing the debtors to use cash collateral. On July 2, 2009, this Court entered a final order on the use of cash collateral by Winmar.

E. On June 28, 2009, the remaining Debtors filed their joint motions for authority to use cash collateral and approval of the consolidated Budget.

F. The Debtors require the use of Cash Collateral on to continue their business operations through December 27, 2009, or the date of the sale of their assets, whichever occurs first. The Debtors and their estates will receive substantial direct and indirect benefits by reason

of the authorization to use Cash Collateral solely as set forth herein and such authorization is in the best interest of the Debtors' estate.

G. The Lender has agreed to the use of Cash Collateral and the provision of adequate protection on the terms and conditions set forth herein. The Cash Collateral shall be used, and its use is conditioned upon the following mandatory actions: (i) the Debtors shall use their best efforts to conduct court approved sales of their businesses, including inventory, and equipment in accordance with bid procedures established by this Court or separate motions to sell assets of the debtors, Pizza Partners of Cincinnati, L.P., Pizza Partners of Ohio, Ltd., Pizza Partners of Indiana, L.P, Pizza Partners of West Virginia, Limited Partnership and Pizza Partners of Florida, Limited Partnership; (ii) the Debtors shall report weekly to the Lender in compliance with the Budget as provided herein; (iii) the Debtors shall serve the Lender the Debtors' monthly operating reports on or about the dates due to be filed; (iv) the Debtors shall identify and determine the amount and terms of any alleged or filed administrative expenses not included in the Budget but <u>not</u> pay any such administrative expenses except upon written consent from the Lender and upon notice and hearing and compliance with the terms of this Final Cash Collateral Order; and (v) the Debtors shall pay such professional fees and expense as approved by the Court and subject to the limitations contained in the Budget if the same is to be paid from Pre-Petition Collateral, Post-Petition Collateral and/or Cash Collateral; and (vi), the Debtors shall use their best efforts to preserve estate assets, subject to the terms of this Final Cash Collateral Order.

H. The Debtors stipulate and agree for all purposes that (i) the debt Debtors owe to Frost in the amount of $19,144,652.12, plus additional amounts that may be claimed by Frost under 11 U.S.C. §506(b), constitutes an allowable claim against the Debtors and is not subject to an objection or dispute of any kind, including, but not limited to subordination pursuant to § 510

of the Bankruptcy Code; (ii) the Debtors do not possess and will not assert any claim, counterclaim, setoff, surcharge claim, recharacterization claim or defense of any kind or nature that would in any way affect the validity, enforceability, priority or nonavoidability of the claims of the Lender; and (iii) the Debtors' obligation under the Loan Documents (defined *infra*) is secured by valid, enforceable, duly perfected liens and security interests granted by the Debtor to the Lender on the Pre-Petition Collateral. For avoidance of doubt, the Debtors stipulate that the Pre-Petition Collateral includes all of the Debtors' tangible and intangible real, personal and mixed assets and all other kind of property and assets whatsoever as more fully described and in accordance with the terms and provisions of the Loan Documents. The Debtors are not presently aware of any alleged basis upon which to challenge the validity, perfection, enforceability, or priority of the liens and security interests in the Loan and Guarantee and any and all such other agreements, mortgages, security agreements, notes, and instruments delivered to the Lender pursuant to the Loan (the Loan, Guarantee and such documents collectively referred to herein as the **"Loan Documents"**).

I.  On September 5, 2009, the Debtor provided notice to all parties in interest in these jointly administered cases of a deadline of October 21, 2009, for any person to file objections to the liens or claims of Frost or the relief requested by the Debtor to use Cash Collateral, including the granting of Post Petition Liens on chapter 5 causes of action. No party in interest timely filed any action seeking to alleged any basis upon which to challenge the validity, perfection, enforceability, or priority of the liens and security interests in the Loan Documents, filed any objection to the claim of Frost or the validity or priority of any lien asserted by Frost, or otherwise challenged the proposed terms under which the Debtors request authorization to use Cash Collateral.

J. The Debtors do not have consent for the use of Cash Collateral, without the protections, terms, and conditions provided in this Final Cash Collateral Order. The Lender is entitled, pursuant to §§ 361 and 363(e) of the Bankruptcy Code, to adequate protection of its interest in the Pre-Petition Collateral and Post-Petition Collateral, to the extent of the diminution in value thereof, for (i) the use of the Cash Collateral, (ii) the use, sale, lease or other diminution in value of the Pre-Petition Collateral and Post-Petition Collateral, and (iii) the imposition of the automatic stay.

K. Good cause has been shown for the entry of this Final Cash Collateral Order. Among other things, granting the relief will permit the Debtors to meet expenses and continue to operate their business, in order to maximize value for the benefit of creditors. The Court further concludes that the interests of the Lender will be adequately protected for the Debtors' use of Cash Collateral under the protections, conditions, and rights contained in, and conferred by, this Final Cash Collateral Order and subject to the consents set forth herein.

L. The use of Cash Collateral authorized herein has been negotiated in good faith and at arm's length among the Debtors and the Lender, and the terms and conditions for the use of Cash Collateral are fair and reasonable and reflect the exercise of the Debtors' prudent business judgment consistent with the fiduciary duties of a debtor in possession.

M. No party in interest timely filed an objection to the Lender's proof of claim ("Lender's Claim") or objected to the other terms of this Cash Collateral Order, prior to October 21, 2009; therefore, any such objections are waived and the stipulations and agreements made by and between the Debtors and the Lender in part I of this Order and elsewhere in this Order shall so bind all other parties-in-interest to this case.

N. Notice of the final hearing on the Cash Collateral Motion was served on all parties in interest in these jointly administered cases and notice of the deadline for objections to the claims or liens asserted by Frost was served on all parties in interest in these jointly administered cases on September 5, 2009. In view of the relief requested, such notice constitutes sufficient notice under Bankruptcy Rule 4001 and LBR 4001(b)(1) and no other notice need be given.

**THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED:**

1. The Cash Collateral Motion is hereby granted on a final basis as to the Debtors for the period of October 21 2009, through December 27, 2009, as set forth herein and any and all objections to the Cash Collateral Motion that have not previously been withdrawn or resolved are hereby overruled.

2. The Debtors are hereby authorized to use Cash Collateral and to provide the adequate protection as authorized herein.

3. The Debtors or any other party shall not use any Cash Collateral or the proceeds thereof: (a) to challenge or otherwise contest in any proceeding (i) the validity, perfection or priority of any of the liens and security interests on any assets of the Debtors in favor of the Lender granted under the Loan Documents, any previously entered cash collateral order (collectively the "*Interim Cash Collateral Orders*"), and/or this Final Cash Collateral Order; (ii) the validity or enforceability of the obligations of the Debtors to the Lender under the Loan Documents; and (iii) the validity or enforceability of the Adequate Protection claim held by Lender under the Interim Cash Collateral Orders, and/or this Final Cash Collateral Order; or (b) to investigate, commence or prosecute any motion, proceeding or cause of action seeking an affirmative recovery against the Lender, or any of its attorneys, advisors or representatives; or (c) to fund acquisitions, capital expenditures, capital leases, or other transactions not in the

ordinary course of the Debtors' business except as otherwise set forth and approved by the Lender.

4. The Debtors shall not make any payments or incur any obligations other than those as may be allowed herein and as set forth in the Budget. The Debtors shall not make any payment of any proceeds constituting part of the Pre-Petition Collateral, Post-Petition Collateral, or Cash Collateral (including, without limitation, proceeds thereof) to: (i) any holder of an allowed claim under or pursuant to § 503(b)(9) of the Bankruptcy Code, or (ii) any unsecured creditor of the Debtors on account of claims arising prior to the commencement of this Chapter 11 Case including, without limitation, payments in satisfaction of reclamation claims of unpaid suppliers of goods delivered to Debtors before the commencement of this Chapter 11 case (regardless of whether such claims have been granted administrative expense priority status pursuant to § 546(c) of the Bankruptcy Code), prior to confirmation of any plan of reorganization or plan of liquidation, unless such payments are specifically provided for in the Budget or authorized by order of this Court.

5. Each week, the Debtors shall deliver to the Lender a consolidated rolling thirteen week cash flow report through December 27, 2009, providing a comparison of actual payments to the Budget line items for the prior weekly period, in a form substantially similar to the reports provided by the Debtors pursuant to the Interim Cash Collateral Orders. For each week during the term encompassed by the Budget, the Debtors' actual weekly expenditures in respect of each line item set forth in the Budget (excluding professional fees and expenses by any and all professionals retained in this Chapter 11 Case pursuant to §§ 327, 363, 1103(a), and/or 1104 of the Bankruptcy Code (the "*Estate Professionals*") which shall be limited to their respective caps detailed in Paragraph 10(a) herein) shall not exceed one hundred ten percent (110%) of the

cumulative amount so budgeted for such line item for the prior weekly periods. The Debtors may not, unless otherwise authorized by Frost in writing (including electronic writing), (a) pay of any item or category of items not included in the Budget; and (b) exceed the total amounts set forth for any particular item or category of items in the Budget by more than 10%. Notwithstanding the foregoing, Debtors may exceed the budgeted expenses of those items encompassing the line items "JMC", "Produce", "Beverage/Other" and "Royalties" (a) on the condition that the total cost or expense in relation to actual revenue is equal or less than the budgeted cost or expense in relation to budgeted revenue or (b) the contractual percentage payable by the Debtors under contracts with CiCi Enterprises or its affiliates or insiders is greater than the amount stated in the Budget.

6. The Debtors' authorization to use Cash Collateral shall terminate on the earliest of: (a) December 27, 2009, unless extended by written agreement between the Debtors and Frost; (b) any violation or breach of any of the terms of this Final Cash Collateral Order by the Debtors that is not cured within five (5) calendar days of receipt by the Debtors of notice of such default, violation or breach; (c) the "effective date" of any plan of reorganization or plan of liquidation confirmed in the Chapter 11 Case; (d) the entry of an order by the Court granting relief from the automatic stay permitting foreclosure of any assets of the Debtors, unless such relief is sought by the Lender, to the extent permitted by the Loan Documents; or (e) the entry of an order of dismissal or conversion of any of the Chapter 11 Cases (collectively, (a) through (e) herein, the "***Termination Date***").

7. The Debtors are authorized to enter into such agreements and take such actions in regard to the structure of its cash management system as is necessary to comply with this Cash

Collateral Order. Any material changes from such pre-petition cash management system must be acceptable to the Lender or be subject to order of this Court.

8. In accordance with the provisions of § 363(e) of the Bankruptcy Code, as adequate protection for use of the cash generated by the Pre-Petition Collateral, the Lender shall receive:

    (a) a claim having priority over any and all expenses of the kind specified in, among other sections of the Bankruptcy Code, §§ 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) and 726, subject, however, to the Carve-Out (as such term is defined in Paragraph 10 below). No other costs or administrative expenses which have been or may be incurred in this Chapter 11 Case, in any conversion of this Chapter 11 Case pursuant to § 1112 of the Bankruptcy Code, or in any other proceeding related thereto, and no priority claims, including, without limitation, any other superpriority claims, are or will be prior to or on a parity with the superpriority Adequate Protection Claim Amount granted to the Lender;

    (b) valid, binding, enforceable and perfected liens in all assets of the Debtors including, without limitation, property and interests of any nature whatsoever, real and personal, tangible and intangible, including without limitation accounts receivable, general intangibles, payment intangibles, supporting obligations, investment property, commercial tort claims, inventory, rolling stock, machinery, equipment, subsidiary capital stock, chattel paper, documents, instruments, deposit accounts, contract rights, tax refunds and the proceeds, products, rents and profits thereof, whether arising from § 552(b) of the Bankruptcy Code or otherwise (collectively, the "***Post-Petition Collateral***") and the Debtors' actions for preferences, fraudulent conveyances, and other avoidance power claims and recoveries under §§ 544, 547, 548, 550 (to the extent

applicable to causes of action under §§ 547 and 548 of the Bankruptcy Code) and 553 of the Bankruptcy Code and all proceeds thereof (collectively, the "***Avoidance Actions***"), subject, however, to the Carve-Out and valid, binding, enforceable, perfected, unavoidable liens or security interests of record, other than the liens of the Lender, and valid ad valorem property tax liens (collectively, the "***Permitted Liens***") (collectively, the Post-Petition Collateral and Avoidance Actions (other than avoidance claims against the Lender constitute the "***Post-Petition Adequate Protection Liens***"); and

(c) The Debtors' agreement that they will limit the use of Cash Collateral to the expenditures contained in the Budget and for the activities described in **Paragraph F** hereof.

9. Notwithstanding anything herein to the contrary, the grant of adequate protection to the Lender, is without prejudice to any rights of the Lender to seek a modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection.

10. Notwithstanding any other provision of this Cash Collateral Order, the liens, security interests and superpriority claims granted to the Lender pursuant to this Final Cash Collateral Order shall be subject to the following limited and narrow carve-outs (collectively, the "***Carve-Out***"):

(a) commencing May 18, 2009, to the occurrence of the Termination Date, any allowed professional fees and expenses that are accrued and unpaid as of the Termination Date, minus any retainers held and available for application to the outstanding professional fees and expenses, provided however, that the total fees paid from Pre-Petition Collateral, Post-Petition Collateral, and/or Cash Collateral for Debtors' counsel shall be capped at and not exceed a total amount of $75,000, and $40,000 for

Debtors' financial advisors; or a total of $115,000 for all Estate Professionals (including the necessity for the Court's approval of the fees and expenses of all such professionals); provided further that nothing herein shall be deemed a waiver of the rights of the Lender to object to any allowed professional fees and expenses by the Estate Professionals;

(b) fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6), fees for noticing and claims Lenders or amounts due to the Clerk of the Bankruptcy Court; and

(c) in the event this Chapter 11 Case is converted to Chapter 7, there shall be a separate carve-out of $20,000 in the aggregate that may be used for reasonable, approved fees and expenses of a Chapter 7 trustee, provided that nothing herein shall be deemed as a waiver of the rights of the Lender to object to any requests for allowance of any fees or expenses. The Carve-Out shall not be available to pay any other claims that are or may be senior to or *pari passu* with the Carve-Out or any professional fees and expenses of a chapter 7 or chapter 11 trustee or any fees and/or disbursements of their bankruptcy professionals incurred in connection with or related to the filing or prosecution of any claims or proceedings of any kind against the Lender.

11. Upon entry of this Final Cash Collateral Order, none of the Cash Collateral, the Pre-Petition Collateral, the Post-Petition Collateral, or the Pre-Petition Lender shall be subject to surcharge, other than for the Carve-Out, pursuant to §§ 506(c), 552(b) or 105(a) of the Bankruptcy Code or otherwise, by the Debtors or any other party in interest, and no consent to a charge against the Cash Collateral, the Pre-Petition Collateral, or Post-Petition Collateral pursuant to §§ 506(c), 552(b) or 105(a) or any other section of the Bankruptcy Code shall be implied from any action, inaction or acquiescence by any of the Pre-Petition Lender or the Pre-Petition Lenders.

12. By reviewing or approving the Budget or enforcing any rights and remedies available under this Cash Collateral Order, the Lender shall not have any liability to any third party nor shall it be deemed to be in control of the operations or assets of the Debtors or be acting as a "responsible person" or "owner" or "operator" with respect to the operation or the management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive, Environmental Response, Compensation and Liability Act, as amended, or in any other federal or state statute or otherwise).

13. The Debtors shall execute and deliver to the Lender all such agreements, financing statements, instruments and other documents as the Lender may reasonably request to evidence, confirm, validate or perfect the Post-Petition Adequate Protection Liens granted pursuant hereto. All Post-Petition Adequate Protection Liens granted herein to secure repayment of the Adequate Protection Claim Amount pursuant to this Cash Collateral Order shall be, and they hereby are, deemed perfected, and no further notice, filing or other act shall be required to effect such perfection; provided, however, if the Lender shall, in its sole discretion, choose to file such mortgages, financing statements, notices of liens and security interests, and other similar documents, all such mortgages, financing statements or similar instruments: (i) shall be deemed to have been filed or recorded as of the date of this Cash Collateral Order; and (ii) no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder.

14. The provisions of this Final Cash Collateral Order shall be binding upon and inure to the benefit of the Lender and the Debtors and their successors and assigns (including any chapter 7 or chapter 11 trustee hereafter appointed or elected for any Debtors' estate, any examiner appointed pursuant to § 1104 of the Bankruptcy Code, and any other fiduciary

hereafter appointed as a legal representative of any Debtors or with respect to the property of any Debtors' estate).

15. Based on the findings set forth in this Final Cash Collateral Order and in accordance with § 363(e) of the Bankruptcy Code, which is applicable to the arrangements contemplated by this Final Cash Collateral Order, in the event that any or all of the provisions of this Final Cash Collateral Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacation shall affect the validity, enforceability or priority of the Post-Petition Adequate Protection Liens or the Adequate Protection Claim Amount authorized or created hereby or thereby. Notwithstanding any such modification, amendment or vacation, pursuant to § 363(e) of the Bankruptcy Code, any claim granted to the Lender hereunder or arising prior to the effective date of such modification, amendment or vacation shall be governed in all respects by the original provisions of this Final Cash Collateral Order, and the Lender shall be entitled to all of the rights, remedies, privileges and benefits, including the liens and priorities granted herein with respect to any such claim.

16. The Debtors are authorized and directed to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, to execute additional security agreements, mortgages and financing statements) contemplated or authorized by this Final Cash Collateral Order.

17. Under no circumstances shall any plan of reorganization or plan of liquidation be filed by the Debtors in these Chapter 11 cases or any plan of reorganization or plan of liquidation be confirmed or become effective unless (i) such plan provides that the Lender's Claim is to be paid in full in cash on or before the effective date of such plan, or (ii) as may otherwise be agreed by the Lender.

18. Until the Lender's Claim has been paid in full, the Debtors shall not seek any order dismissing or converting any of these Chapter 11 cases unless the Lender agrees to such dismissal or conversion in writing. If an order dismissing or converting this Chapter 11 case under § 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with §§ 105 and 349(b) of the Bankruptcy Code): (i) that the effectiveness of any dismissal shall not occur until the Lender has received properly recorded perfection documents in all of the Debtors' property; (ii) the superpriority claims and Post-Petition Adequate Protection Liens granted pursuant to the Interim Cash Collateral Orders and this Final Cash Collateral Order shall continue in full force and effect and shall maintain their priorities as provided in the Interim Cash Collateral Orders and this Final Cash Collateral Order until all obligations in respect thereof shall have been satisfied and paid in full in cash (and that such superpriority claims and Post-Petition Adequate Protection Liens shall, notwithstanding such dismissal or conversion, remain binding on all parties in interest); and (iii) to the extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding dismissal or conversion, for the purposes of enforcing the superpriority claims and Post-Petition Adequate Protection Liens referred to in (ii) above.

19. None of the Pre-Petition Collateral, the Post-Petition Collateral, Cash Collateral, or the Lender shall be subject to the doctrine of marshaling.

20. The entry of this Final Cash Collateral Order shall not prejudice or limit the rights of the Lender to file and pursue a motion to lift the § 362 automatic stay to foreclose on pre-petition collateral or file a motion for adequate protection.

21. The automatic stay arising under § 362 of the Bankruptcy Code is vacated and modified solely to the extent necessary to permit the Debtors and the Lender, to implement the provisions of this Final Cash Collateral Order.

22. To the extent of any conflict between or among the express terms or provisions of the Cash Collateral Motion, any other order of this Court, or any other agreements and the express written terms and provisions of this Final Cash Collateral Order, the terms and provisions of this Final Cash Collateral Order shall govern. Nothing in this Final Cash Collateral Order shall reduce or impair the rights of the Lender, including without limitation, the grant of adequate protection previously provided to the Lender, pursuant to the Interim Cash Collateral Orders; and this Final Cash Collateral Order.

23. Within five (5) business days from entry of this Final Cash Collateral Order, the Debtors shall serve by United States mail, first class postage prepaid, copies of this Final Cash Collateral Order on the Notice Parties.

24. This Final Cash Collateral Order shall take effect immediately upon entry hereof, notwithstanding the possible or potential application of Federal Rules of Bankruptcy Procedure 6004(g), 7062, 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this order on the Court's docket in this case.

25. Upon the occurrence of the Termination Date, other than as to amounts authorized to be paid pursuant to the Budget, all cash and cash equivalents remaining in the estates of all debtors except TEG Pizza Partners of Indiana, L.P., shall be immediately paid for the benefit of the applicable Lenders, subject to the Carve-Out.

26. This Final Cash Collateral Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

27. Nothing in the Final Cash Collateral Order acknowledges or grants liens that prime the statutory priority of ad valorem property tax liens.

28. The claims of Frost are finally allowed as claimed on the proof of claim filed by Frost, plus amounts to which Frost may be entitled under 11 U.S.C.§506(b) and not party in interest may file any objection to the claims of Frost or the validity of the liens asserted by Frost.

###END OF ORDER###

**EXHIBIT TO ORDER IS DOCKET ENTRY NUMBER 208**