U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described**.

Signed November 17, 2009                                                                 **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IN RE:
WINMAR PIZZA, L.P., *et al.*                    Case No. 09-33027-BJH-11
       Debtors in Possession              (Chapter 11, Jointly Administered)

**ORDER PURSUANT TO 11 U.S.C. §§363 AND 365 AND FED. R. BANKR. P. 2002, 6004 AND 6006 APPROVING AND AUTHORIZING (I) THE SALE OF THE ASSETS OF PIZZA PARTNERS OF SOUTH CAROLINA, L.P. AND (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF (A) EXECUTORY CONTRACTS WITH CICI ENTERPRISES, L.P. AND (B) LEASES OF REAL PROPERTY**

On September 22, 2009, this Court conducted a hearing on the Debtors' motion for authorization to sell the assets of Pizza Partners of South Carolina, L.P. (the "Motion"). Prior to the hearing the Debtors filed the Notice of Withdrawal of Assets from Auction Sale on September 15, 2009, which withdrew all assets from the hearing on the Motion except the assets of Pizza Partners of South Carolina, L.P. ("South Carolina"). CiCi Enterprises, L.P. ("CiCi") filed it Statement of Franchisor CiCi's Enterprises, L.P. in regard to Proposed Sale of Stores 213 and 297 (Pizza Partners of South Carolina, L.P.)

to MBTL, Inc. (the "CiCi Statement").  Based on the evidence adduced at the hearing and the arguments and authorities of counsel,

The court finds:

1. This Court has jurisdiction over the Motion, the assets of South Carolina, and the transactions contemplated by the Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

3. The only transactions sought by the Motion on the date of the hearing were transactions related to the assets of South Carolina.

4. The assets of South Carolina include rights under agreements between CiCi or its affiliates and South Carolina for CiCi store numbers 213 and 297 (the "Franchise Agreements").

5. The Franchise Agreements are executory contracts and are treated under 11 U.S.C. §365.

6. South Carolina conducts business at leased premises located at 6120 St. Andrews Rd., Columbia, SC 29212 and 141 Pelham Dr., Suite A, Columbia, SC 29209 pursuant to lease agreements (the "Leases") under which South Carolina is the lessee.

7. The Debtor conducted an auction of the assets of South Carolina on September 15, 2009 in accordance with that order (I) Authorizing and Scheduling Public Auction for the Sale of Certain of Debtors' Domestic Assets Free and Clear of All Liens, Claims, and Encumbrances, (II) Approving Bid Procedures and (III) Setting Procedures for Assumption or Rejection of Executory Contracts and Unexpired Leases and Non-Debtor Parties to State Defaults and Cure Amounts entered by this Court on or about August 14, 2009.

8.    At the conclusion of the auction, South Carolina designated MBTL, Inc. ("MBTL") as the high bidder. After the auction, South Carolina and MBTL negotiated an increase in the purchase price.

9.    The bid by MBTL is the highest and best offer for the assets of South Carolina, is fair and reasonable, will provide the greatest recovery to creditors of South Carolina, and approval of the transactions contemplated by the Motion is in the best interest of the creditors of South Carolina.

10.    MBTL is a good faith purchaser and is entitled to the protections of a good faith purchaser under 11 U.S.C. §363(m).

11.    The sale contemplated by the Motion was negotiated, proposed and entered into by South Carolina and MBTL in good faith and from arm's length bargaining position. Neither South Carolina, nor MBTL have engaged in any conduct that would cause or permit the agreements contemplated by the Motion to be avoided under 11 U.S.C. § 363(n).

12.    MBTL is not an insider, as defined by 11 U.S.C.§101, of South Carolina.

13.    The sale should be approved without delay and cause exists to terminate the stay of this order as provided by Fed.R.Bankr.P. 6004(h).

14.    Some of the positions asserted by CiCi in the CiCi Statement are objections to or proposed conditions on the assumption and/or assignment of the Franchise Agreements from South Carolina to MBTL.

15.    Any and all defaults by South Carolina under the Franchise Agreements are either (a) cured by the provisions of this Order, (b) subject to being cured pursuant to the

procedures contained in the Order signed August 14, 2009, (Dkt #93) as it exists or as it may be modified, and/or (c) subject to the cure process contained in this Order. .

16. MBTL can provide adequate assurance of future performance of obligations under the Franchise Agreements.

17. MBTL provides adequate assurance of future performance under the Leases.

IT IS ORDERED ADJUDGED AND DECREED that,

1. Subject to the other provisions of this order, South Carolina is authorized to sell all of its assets free and clear of any and all liens, claims and encumbrances pursuant to 11 U.S.C. §363(f) to MBTL, Inc. for the purchase price of $1,030,000 subject to adjustments contained in that Asset Purchase Agreement executed between MBTL and South Carolina; provided however, that the liens, claims and encumbrances of The Frost National Bank shall attach to the proceeds of the sale, except to the extent provided to the contrary by this Order and no provision of this order in any way limits, modifies or restricts the liens of The Frost National Bank to the proceeds of the sale of the assets of South Carolina.

2. All franchise agreements with CiCi are hereby assumed by South Carolina and all defaults are either (a) cured by the actions stated in this Order, or (b) subject to the procedures for resolution of disputes regarding (i) existence of defaults, (ii) cure of defaults, (iii) and/or compensation for pecuniary loss caused by defaults.

3. The Franchise Agreements are assumed by South Carolina and assigned to MBTL.  Nothing herein shall diminish MBTL's obligations to CiCi as Transnsferee and/or as Franchisee under the franchise agreements being assumed

4. The Leases are assumed by South Carolina and assigned to MBTL.

5. South Carolina shall take the following action with the purchase price received from the sale:

    a. The amount of $37,600.00[1] shall be paid to CiCi; provided however that CiCi shall repay such amount to South Carolina or the Frost National Bank if repayment is ordered by future order of this Court;

    b. South Carolina shall escrow in a separate segregated account at The Frost National Bank the amount of $55,973.00, which amount shall remain in such account until this Court enters an order specifying the disbursement of such funds and South Carolina shall not commingle any other funds in this account without further order of this Court; and

    c. South Carolina shall pay the entire pre-petition tax claims (that are estimated to be $15,374.00.)

6. The stay of this order pursuant to Fed.R.Bankr.P. 6004(h) is nullified and South Carolina is authorized to close the transactions contemplated by the Motion immediately after entry of this Order.

7. MBTL is afforded all of the protections afforded by 11 U.S.C. § 363(m) as a good faith purchaser of the assets of South Carolina.

8. The transactions contemplated by the Motion are approved with respect to the assets of South Carolina.

9. South Carolina is authorized to perform all obligations and comply with all terms of the transactions contemplated by the Motion with respect to the assets of South Carolina.

---

[1] Such sum represents two payments of $5,000 for each store for transfer fees and two payments of $13,800 each for payment of pre-petition advertising fund fees owing from each store.

10. South Carolina, acting through its appropriate representative(s) is authorized to execute and deliver the documents and instruments that South Carolina deems necessary or appropriate to implement the transactions contemplated by the Motion and effectuate the sale (including, without limitation, authorization to make any and all payments that are necessary or required with respect to any taxes, fees or similar expenses in connection with any such instruments or documents) and to take all further actions required to assign, transfer, grant, convey and confer to MBTL or reduce to possession of the MBTL the assets of South Carolina.

11. South Carolina, acting through its appropriate representative(s), is authorized to approve and sign all documents in connection with the transactions contemplated by the Motion and that such documents are binding without further action under any partnership agreement.

12. The documents and other instruments executed to consummate the transactions contemplated by the Motion may be amended, modified, or supplemented by the parties thereto and in accordance thereof without further order of this Court, provided that any such amendment, modification or supplementation does not conflict with the terms of this Order or have a material adverse effect on the estate of South Carolina and provided The Frost National Bank is given reasonable prior written notification (including by email) of such amendment, modification, or supplement.

13. At the closing of the transactions contemplated by the Motion, South Carolina shall execute a release of any and all claims of South Carolina against CiCi in the form attached hereto as Exhibit "A".

14. At closing, all remaining funds not paid to third parties and/or escrowed, all per the terms of this order, shall be paid to Frost National Bank.

###END OF ORDER###

Approved as to Form and Substance:

/s/ Richard W. Ward
Richard W. Ward, counsel for the Debtors


/s/ Clay M. Taylor
Clay M. Taylor
Counsel for The Frost National Bank


/s/ James V. Hoeffner
James V. Hoeffner
Counsel for CiCi Enterprises, L.P.

# EXHIBIT A

Case 09-33027-bjh11    Doc 222    Filed 11/17/09    Entered 11/17/09 16:27:21    Desc
Main Document    Page 8 of 10

**GENERAL RELEASE**

This General Release (this "Release") is executed this ____ day of _____ 2009 by Pizza Partners of South Carolina, LP, a South Carolina limited partnership ("Seller') in favor of the Released Parties (defined below)..

**RECITALS:**

CiCi Enterprises, LP ("Franchisor") and Seller are parties to two franchise agreements for CiCi's Pizza Restaurants: (i) Franchise Agreement dated effective March 23, 2005, as amended September 27, 2006 for CiCi's Pizza Restaurant #213 ("Restaurant #213") located at 6120 St. Andrews Road, Columbia, S.C. 29212 ("#213 Franchise Agreement"), and (ii) Franchise Agreement dated effective March 23, 2005, as amended September 27, 2006 for CiCi's Pizza Restaurant #297 ("Restaurant #297") located at 141 Pelham Road, Suite A, Columbia, S.C. 29209 ("#297 Franchise Agreement"). Restaurant #213 and Restaurant #297 are referred to collectively as the "Restaurants" and #213 Franchise Agreement and #297 Franchise Agreement are referred to collectively as the "Franchise Agreements".

Seller is a Debtor in Possession in Case No. 09-33027-BJH-11 (Chapter 11, Jointly Administered), pending in the United States Bankruptcy Court For The Northern District of Texas (Dallas Division).

In connection with the sale of the Restaurants and assignment of the Franchise Agreements, and pursuant to the terms of the Franchise Agreements and applicable law, the Court has ordered the Seller to execute this Release.

NOW, THEREFORE, for good and valuable consideration, including, without limitation, Franchisor's consent to the sale of the Restaurants and assignment of the Franchise Agreements, the receipt and sufficiency of which are hereby conclusively acknowledged, the Seller agrees as follows:

1. <u>General Release</u>.  The Seller, for itself and on behalf of all other persons or entitiesclaiming under it, hereby irrevocably and unconditionally releases, acquits and forever discharges Franchisor, its affiliates (including, but not limited to, all parents and subsidiaries) and the officers, directors, shareholders, partners, members, agents, representatives, independent contractors, servants, employees, successors and assigns of each of them, past and present, in their corporate and individual capacities (the "Released Parties") from all actions, causes of action, suits, debts, liens, obligations, promises, liabilities, claims, rights, demands, damages, controversies, losses, costs, and expenses (including attorneys' fees and costs), known or unknown, suspected or unsuspected, fixed or contingent, which any of them may have ever had, now has, or may hereafter have by reason of any event, transaction or circumstance arising out of or relating to the Restaurants or the Franchise Agreements or the franchise relationship created thereby.

2. <u>Unknown/Unanticipated Claims</u>.  Seller acknowledges that there is a risk that, subsequent to the execution of this Release, it will discover, incur or suffer claims which are unknown or unanticipated at the time this Release is executed.  Seller agrees that it is assuming the risk of such unknown and unanticipated claims and that this Release applies thereto.

      3.      <u>Assignment</u>.  Seller represents and warrants that it has not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim released under the terms of Paragraph 1.

      4.      <u>Complete Defense</u>.  Seller acknowledges that this Release shall be a complete defense to any claim released under the terms of Paragraph 1 and hereby consents to the entry of a temporary or permanent injunction to end the assertion of any such claim.

      5.      <u>General Provisions</u>.

          a.      <u>Authority</u>.  Seller represents and warrants that it has all necessary authority to enter into this Release.

          b.      <u>Counterpart Execution</u>.  This Release may be executed in any number of identical multiple counterparts, each of which shall be deemed an original for all purposes and all of which shall constitute one and the same instrument.

          c.      <u>Governing Law</u>.  This Release shall be construed under and in accordance with, and any disputes hereunder shall be governed by, the internal law of the State of Texas.

IN WITNESS WHEREOF, the Seller has executed this Release as of the date first written above.

**SELLER:**

**Pizza Partners of South Carolina, LP**, a South Carolina limited partnership

By: TEG Pizza GP, LLC, its General Partner

By: _____
     Norman Winton, Manager