J. Stephen Ravel
Texas Bar I.D. 16584975
Clay M. Taylor
Texas Bar I.D. 24033261
Kelly Hart & Hallman LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone:    817/332-2500
Telecopy:      817/878-9280

COUNSEL FOR THE FROST NATIONAL BANK

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| WINMAR PIZZA, L.P., *et al.* | § | Case No. 09-33027-BJH-11 |
| | § | |
| Debtors-in-Possession | § | (Jointly Administered) |

**JOINT MOTION FOR APPROVAL OF COMPROMISE AND SETTLEMENT WITH THE FROST NATIONAL BANK, CICI ENTERPRISES, LP AND CERTAIN GUARANTORS OF OBLIGATIONS OF CERTAIN DEBTOR OBLIGATIONS**

**MOVANTS ARE SEEKING EXPEDITED CONSIDERATION IN CONNECTION WITH THIS MOTION. IF EXPEDITED CONSIDERATION IS GRANTED, AND IF YOU OPPOSE THIS MOTION, YOU SHOULD FILE A RESPONSE PRIOR TO THE HEARING AND/OR ATTEND THE EXPEDITED HEARING AND STATE YOUR BASIS FOR YOUR OBJECTION. HOWEVER, IN THE EVENT THAT MOVANTS' REQUEST FOR EXPEDITED HEARING IS DENIED, NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 501 W. TENTH STREET, ROOM 206, FORT WORTH, TEXAS, 76102 BEFORE CLOSE OF BUSINESS ON JANUARY 6, 2009, WHICH IS TWENTY ONE (21) DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE MUST BE IN WRITING AND FILED WITH THE CLERK, AND A COPY MUST BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED, A HEARING WILL BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT.**

The Debtors, Frost National Bank ("Frost"), CiCi Enterprises, LP ("CiCi") and Norm Winton, Rudolph Bratty and Fred Margolin (the individuals being collectively referred to as the "Individual Guarantors" and collectively all parties being referred to as the "Movants") move the Court to approve a proposed Compromise and Settlement Agreement by and between the Debtors, Frost, CiCi and the Individual Guarantors. Movants request that approval of the compromise include authorization for the transfers contemplated by this agreement. Movants would show the Court as follows:

## **FACTUAL SUMMARY**

1. Frost loaned Pizza Master Holding Partnership approximately $19 million dollars. The loans were subsequently modified in conjunction with the Debtors restructuring their internal corporate operations and the loans were extended with Winmar Pizza, LP as the primary obligor. The loans comprising the $19 million in obligations owed to Frost were each guaranteed by each of the other Debtors, save and except Pizza Partners of Indiana, LP. Moreover, the loan was guaranteed by, among others, 3 principals of the Debtors, the Individual Guarantors. All of the assets of the Debtors, save and except their assets located in Indiana, were pledged as security for the loan. As a condition for the use of cash collateral, the Court has also granted Frost a post-petition security interest in substantially all of the Debtors assets save and except the Indiana stores' assets and has additionally granted Frost a post-petition lien in the Indiana assets to the extent that Frost's cash collateral suffers a diminution in value.

2. The Debtors, their predecessors and other related entities also entered into

franchise agreements with CiCi on a store-by-store basis. The obligations under the franchise agreements were guaranteed by, among others, the Individual Guarantors save and except Rudolph Bratty. Moreover, the franchise agreements each contained a cross-default clause which stated that a default under any one franchise agreement constituted a default under the other franchise agreements.

3. The Debtors requested, and the Court granted, a bar date for all parties to executory contracts who believed that it was owed cure costs prior to any of the debtors assuming and assigning those executory contracts to file a statement of what cure costs were owed.

4. CiCi, in accordance with the Court's order setting the bar date, timely filed its statement of cure costs which alleged that the cure costs owed prior to the Debtor being able to assume and assign any of its contracts amounted to approximately $5.7 million.

5. Frost moved the Court for leave to object to CiCi's statement of cure costs and establish procedures related thereto. The Court granted Frost's motion and a contested matter was initiated regarding the proper amount of the cure cost claims and the potential terms under which franchise agreements could be assumed by the Debtors.

6. At the same time the parties were instituting the process by which CiCi's cure costs would be determined, the Debtors have been actively marketing its assets and two sales procedures have been approved by the Court. Two South Carolina franchises have been sold pursuant to Court approved procedures and sales, though those sales have not yet closed. The majority of the Debtors' franchises, which are located in Texas and Maryland, are for sale under Court approved procedures. Bids were due on November 16, 2009. Since multiple bids were received, an auction of those assets was conducted on November 18, 2009, with a sale approval

hearing to follow on December 7, 2009. That sale hearing has been continued. The balance of the Debtors' franchises (the "Outlier Stores") are anticipated to be sold through a series of 363 sales upon motion by the Debtors. Negotiations about the terms of those Outlier Stores' sales are still ongoing.

## **TERMS OF THE SETTLEMENT**

7. Under the proposed settlement, the Debtors, upon entry of a final order approving this compromise and settlement after appropriate notice and opportunity for hearing, will require that any Asset Purchase Agreement ("APA") accepted as a qualifying bid, expressly acknowledges that the cure costs related to capital expenditures required by CiCi is an assumed liability under the APA for the stores to be purchased pursuant to that APA. However, the APA also expressly acknowledges that the assumed liability related to cure costs is limited to the lesser of the amount claimed by CiCi in Exhibit E to its Supplemental Statement of Cure Costs filed with the Bankruptcy Court or the actual amount required to perform the required upgrades under the assumed contracts. Such limitation shall only apply to motions to sell filed in November, 2009.

8. Frost will receive a cash payment from the Individual Guarantors in exchange for mutual releases to be exchanged by and between themselves, and between the Individual Guarantors and CiCi and Frost, respectively. Copies of those proposed releases are attached hereto as Exhibit Nos. 1 (Frost and the Guarantors) and 2 (CiCi and the Guarantors). Moreover, the Debtors and their partners, if any, upon assumption and assignment of the respective franchise agreements, shall exchange general mutual releases with CiCi, substantially in the form attached hereto as Exhibit No. 3.

9. Paragraphs 10 through 15 are agreements between CiCi, Debtors and Frost Bank.

10. Notwithstanding anything to the contrary, the total amount of cash consideration paid by the Debtors from sales proceeds of its assets payable to CiCi for cure costs shall be $1.625 million. In the event of a sale of any of the Outlier Stores closing prior to the Texas and Maryland stores first, the first $1 million of net proceeds[1] from the sales of any Outlier Store shall be payable to CiCi. Payment to CiCi and/or Frost shall be at closing. Regardless of when the Outlier Stores are sold, the balance of the net proceeds of the sale of any of the Texas-Maryland stores as well as any proceeds from the Outlier Stores exceeding $1,000,000 net payable to CiCi, shall be paid pro rata with CiCi receiving 20% of the net proceeds, not to exceed $1,625,000, and Frost receiving 80% of the net proceeds. After the payment of $1,625,000 is made to CiCi from the Outlier Stores and/or the Texas-Maryland Stores, then Frost shall be entitled to 100% of the net proceeds, not to exceed its actual claim. Payment to CiCi and Frost shall be at closing.

11. The Debtors shall use their best efforts to locate a purchaser for the Florida franchise's assets. CiCi may also use its efforts to locate a buyer for those assets and can propose a buyer to the Debtors for consideration. In the event that the Debtors can not come up with a purchaser who will pay more consideration for that location's assets within two weeks of a purchaser being proposed to them by CiCi, CiCi may designate a proposed purchaser for the franchise at whatever sales price it deems adequate or can negotiate. CiCi's option to so designate a proposed purchaser shall run until the closing of the sale of the Maryland and Texas stores.

---

1 Certain stores are being sold for a note and/or cash and a note. CiCi shall not accept or be paid with any promissory notes. The $1.625 million is to be paid CiCi in cash.

JOINT MOTION FOR APPROVAL OF COMPROMISE AND SETTLEMENT
WITH THE FROST NATIONAL BANK, CICI ENTERPRISES, LP AND
CERTAIN GUARANTORS OF OBLIGATIONS OF CERTAIN DEBTOR OBLIGATIONS          PAGE 5 OF 10

12. The Court in the above referenced case has approved the sale of Stores 213 and 297 from the Debtor Pizza Partners of South Carolina to MBTL, Inc. Pursuant to the Order Approving Sale, the sum of $37,600 is to be conditionally paid to CiCi for its transfer fees of $10,000 and prepetition advertising fees of $27,600.

13. Upon the order approving this Motion, the transfer of the $37,600 shall no longer be conditional and such sum shall be credited against the $1,625,000 settlement claim of CiCi and reduce it to $1,587,400.

14. The above order approving the sale also provides that the sum of $55,973 be deposited with Frost Bank for the remainder of CiCi's cure claim to which the Bank objected. The sum of $33,706 is attributable to CiCi's cure claim for pre-petition capital expenditures. Within 7 days of the order approving this settlement becoming final, Frost shall pay such $33,706 deposit to CiCi, Trustee for MBTL Inc, and CiCi shall pay such sum to MBTL Inc. for making the capital improvements listed on CiCi's cure statement for these stores. Such $33,706 payment is not credited to CiCi's settlement claim.

15. The above order approving the sale also provides that included in the deposit are: (a) CiCi's cure claim for legal and accounting fees in the amount of $11,474, and (b) CiCi's cure claim for pro rata liquidated damages in the amount of $10,792. Within seven days of the order approving this settlement, Frost Bank shall pay the sum of the two amounts to CiCi for a total of $22,266 which shall be applied to further reduce CiCi's settlement claim.

16. The signature below of counsel constitutes each parties written approval to this Settlement. This Settlement shall not become binding upon the parties until the order approving this Motion becomes final, non-appealable and not superseded or otherwise stayed.

17. This Agreement shall survive the conversion of this case to another chapter and/or the appointment of a trustee under any Chapter.

## THE LEGAL STANDARD

18. Pursuant to Rule 9019(a) of the Bankruptcy Rules, the Court has discretion to approve a compromise of a controversy. *See Protective Comm. of Stockholders of TMT Trailer Ferry, Inc. v. Anderson* (In re TMT Trailer Ferry, Inc.), 390 U.S. 414, 424 (1968), *Continental Airlines, Inc. v. Air Line Pilots' Ass'n Int'l,* (In re Continental Airlines, Inc.), 907 F.2d 1500, 1508 (5th Cir. 1990). A trustee or debtor may compromise or settle claims in the administration of the estate contingent upon approval of the court, after notice and hearing. *See* Fed. R. Bankr. P. 9019(a). The bankruptcy court has sound discretion in determining whether to approve a compromise. *See In re Aweco, Inc.*, 725 F.2d 293 (5th Cir. 1984); *American Employers Ins. Co. v. King Resources Co.*, 556 F. 2d 471 (10th Cir. 1977).

19. Courts typically consider the following factors in determining whether to approve a proposed settlement:

    (1)    The probability of success in litigation;

    (2)    The likely difficulties in collection;

    (3)    The complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and

    (4)    The paramount interest of the debtor's creditors.

*See In re TMT Trailer Ferry, Inc.,* 390 U.S. at 424-25; *Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp.* (*In re Foster Mortgage Corp.*), 68 F.3d 914, 917 (5th Cir. 1994); *In re General Homes Corp.,* 181 B.R. 898, 901 (Bankr. S.D. Tex. 1995); *Jones v. Cage* (*In re W.J. Services, Inc.*), 146 B.R. 190, 191 (S.D. Tex. 1991). This standard balances the risks and benefits

associated with pursuing a potential claim against the costs associated with the proposed settlement.

## THE SETTLEMENT IS IN THE BEST INTEREST OF THE ESTATE

20. Cause exists for the approval of the proposed settlement. The settlement is in the best interest of the estate. First, it eliminates or shifts the obligations to non-debtor parties for payment of cure costs of over $4,000,000.00 in pre-petition claims and potential post-petition claims. Second, it eliminates the possibility of prolonged and costly litigation about which cure costs must be paid to allow assumption and assignment, how much those claims are and what liabilities a purchaser must take on in accepting an assignment of the franchise agreement from the Debtors. Third, it promotes certainty to the ongoing sales process, which, in turn, could lead to higher bids for the assets being sold. Fourth, the compromise has been agreed to by both Frost and CiCi, whom are the two largest stakeholders in the bankruptcy case. Fifth, the compromise liquidates Frost's claims against the Individual Guarantors and reduces the total amount owed to Frost which must be satisfied before other claims against the estate can be satisfied

21. Based on the standards described above, the proposed settlement is in the best interest of the Debtor, the Debtors' estates, and the Debtors' creditors and should be approved.

## REQUEST FOR RELIEF

Movants request that the Court enter an Order (1) approving the proposed Compromise and Settlement Agreement pursuant to Rule 9019; (2) authorizing the assumption and assignment of the Debtors' franchise agreements provided the sales orders procedures are complied with under §§ 363 and 365 of the Bankruptcy Code, free and clear of all liens claims and encumbrances; 3) granting authority for the Debtors to sign the releases contemplated herein in favor of CiCi; 4) directing the payment of funds from the Individual Guarantors to Frost

contemplated herein; 5) establishing the option period for CiCi related to the Florida franchise as contemplated herein; 6) to the extent necessary, modifying the sales procedures to require that bidders on potential assets acknowledge the obligation to pay the capital expenditures as contemplated herein as an assumed obligation; 7) authorizing the disbursements in the manner described herein upon obtaining court approval of the sales contemplated herein; and 8) granting such other and further relief to which Frost, CiCi the Individual Guarantors and the Debtor may be entitled at law or in equity.

Respectfully submitted,

*/s/ Clay M. Taylor*
J. Stephen Ravel
State Bar No. 16584975
Clay M. Taylor
State Bar No. 24033261
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: 817/332-2500
Telecopy: 817/878-9280

COUNSEL FOR THE FROST NATIONAL BANK

*/s/ Richard W. Ward*
Richard W. Ward
State Bar No. 20846350
RICHARD W. WARD LAW OFFICE
6860 N. Dallas Parkway
Suite 200
Plano, TX 75024
Telephone: 214-220-2402
Facsimile: 972-499-7240

COUNSEL FOR DEBTORS-IN-POSSESSION
WINMAR PIZZA, L.P., ET AL.

*/s/ C. John Scheef III*
C. John Scheef III

State Bar No. 17735585
Patrick J. Schurr
State Bar No. 17853530
SCHEEF & STONE, L.L.P.
2601 Network Boulevard, Suite 102
Frisco, TX 75034
Telephone: (214) 472-2100
Facsimile: (214) 472-2150

COUNSEL FOR THE INDIVIDUAL GUARANTORS

*/s/ James V. Hoeffner*
James V. Hoeffner
State Bar No. 09772700
GRAVES, DOUGHERTY, HEARON & MOODY, P.C.
401 Congress Ave., Suite 2200
Austin, TX 78701
Telephone: 512.480.5707
Facsimile: 512.480.5886

COUNSEL FOR CICI ENTERPRISES, LP

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document was served in accordance with the Federal Rules of Bankruptcy Procedure on December 16, 2009, upon the parties listed on the attached service list either via ECF or via U.S. mail via first class service if that party did not receive ECF notification through their counsel or otherwise.

*/s/ Clay M. Taylor*
Clay M. Taylor