Richard W. Ward
Texas Bar No. 20846350
6860 N. Dallas Parkway
Suite 200
Plano, TX 75024
Counsel for debtors
        in possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IN RE:

WINMAR PIZZA, L.P., *et al.*            Case No. 09-33027-BJH-11
Debtors in Possession                   (Chapter 11) (Jointly Administered)

**MOTION FOR ORDER
AUTHORIZING SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND
ENCUMBRANCES PURSUANT TO 11 U.S.C. §363 (f) WITH ASSUMPTION AND
<u>ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON JANUARY _____,
2010, AT _____ _____.M. CST IN THE COURTROOM OF THE HONORABLE
BARBARA J. HOUSER, CHIEF UNITED STATES BANKRUPTCY JUDGE FOR THE
NORTHERN DISTRICT OF TEXAS, AT 1100 COMMERCE STREET, 14TH FLOOR,
DALLAS, TEXAS 75242.**

**IF YOU OBJECT TO THE RELIEF REQUESTED HEREIN, YOU MUST
RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF
THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST
FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT
WITHIN TWENTY-THREE DAYS FROM THE DATE THAT YOU WERE SERVED
WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON
COUNSEL FOR THE DEBTORS; OTHERWISE, THE COURT MAY TREAT THE
PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

TO THE HONORABLE BARBARA J. HOUSER, UNITED STATES BANKRUPTCY
JUDGE:

COMES NOW Winmar Pizza, LP, Pizza Foods of Texas, L.P., TEG-Pizza Partners of

Texas, L.P., TEG Pizza Partners Holdings, L.P. and Pizza Partners of Maryland, L.P.

(collectively the "Movants") who file this Motion for Order Authorizing Sale of Assets Free and

Clear of Liens, Claims and Encumbrances Pursuant to 11 U.S.C. §363 (f) with Assumption and Assignment of Executory Contracts and Unexpired Leases and respectfully represents:

1.      Winmar Pizza, L.P. filed a voluntary petition under chapter 11 of Title 11, United States Code, on May 15, 2009.  On June 28, 2009, the Movants other than Winmar, filed their respective voluntary petitions for relief under chapter 11 of Title 11, United States Code.  This Court ordered joint administration of these cases.

2.      This is a core proceeding under 28 U.S.C. § 157(2)(A) and (M).

**Prior Sales Efforts**

3.      On or about July __, 2009, the Movants and other affiliated debtors filed Motion for Order (I) Authorizing and Scheduling Public Auction for the Sale of Debtors' Assets Free and Clear of All Liens, Claims, and Encumbrances,  (II) Approving Bid Procedures (III) Setting Procedures for Assumption or Rejection of Executory Contracts and Unexpired Leases and Non-Debtor Parties to State Defaults and Cure Amounts and (IV) Authorization to  Sell Assets Free and Clear of Liens, Claims And Encumbrances Pursuant to 11 U.S.C. §363 (f) with Assumption and Assignment of Executory Contracts and Unexpired Leases  (the "Original Bid Procedures Motion") seeking authority to conduct an auction of their assets.

4.      This Court held a hearing on the Original Bid Procedures Motion on August 4, 2009 and on August 14, 2009, this Court entered the Order (I) Authorizing and Scheduling Public Auction for the Sale of Certain of Debtors' Domestic Assets Free and Clear of All Liens Claims and Encumbrances, (II) Approving Bid Procedures and (III) Settings Procedures for Assumption or Rejection of Executory Contracts and Unexpired Leases and Non-Debtor Parties to State Defaults and Cure Amounts (the "Original Auction Order").

5.     On or before September 10, 2009, the Movants and the affiliated debtors received bids, but none of the bids were qualifying bids in conformity with the bid procedures established by the Original Auction Order.

6.     After consultation with The Frost National Bank ("Frost"), the principal secured creditor of the Movants, the debtors, including the Movants, determined that the debtors would not proceed with the scheduled auction of assets, except for an auction of the assets of Pizza Partners of South Carolina, L.P.  The debtors, including the Movants, also determined that a modified auction procedure would be the best method to sell the assets of the Movants.  The debtors also determined that the assets of Pizza Partners of Cincinnati, L.P., Pizza Partners of Ohio, Ltd., Pizza Partners of West Virginia, Limited Partnership, TEG-Pizza Partners of Indiana, L.P. and Pizza Partners of Florida Limited Partnership would be sold separately from the assets of the Movants.

7.     Thereafter on ____, 2009, the  Movants filed the Motion For Order (I) Authorizing and Scheduling Public Auction for the Sale of Debtors' Assets Free and Clear of All Liens, Claims, and Encumbrances,  (II) Approving Bid Procedures (III) Setting Procedures for Assumption or Rejection of Executory Contracts and Unexpired Leases and (IV) Authorizing Sale of Assets Free and Clear of Liens, Claims and Encumbrances Pursuant to 11 U.S.C. §363 (f) with Assumption and Assignment of Executory Contracts and Unexpired Leases (the "Second Bid Procedures Motion") seeking authority to conduct an auction of the assets of the Movants in accordance with the bid procedures identified therein.

8.     On October 7, 2009, this Court conducted a hearing on the Second Bid Procedures Motion and entered an order (the "Second Bid Procedures Order") granted most of the relief requested, but denied the request to designate a "stalking horse bidder".  This Court set

a hearing on December 7, 2009, on the portion of the Second Bid Procedures Motion that requested approval of the sale of the Movants assets.

9.       Prior to November 18, 2009, the Movants received bids and on November 18, 2009, the Movants conducted an auction of their assets.

10.      The bid procedures for the November 18, 2009, auction allowed bidders to submit asset purchase agreements that varied from the asset purchase agreement attached to the order ultimately entered by this Court.   Each of the bidders submitted asset purchase agreements with numerous changes from the version proposed by the debtors, some of the changes were minor, clarifying or correcting, provisions of the asset purchase agreements, but others were substantive. A substantial amount of time was expended by the Movants and Frost prior to the commencement of the auction in an effort to standardize the asset purchase agreements submitted by the qualified bidders.

11.      At the conclusion of the auction process Awesome Acquisition Company ("Awesome") was the highest bidder, having submitted a bid of $11,500,000.  The bid from Awesome was not sufficient to fully pay the secured claims of Frost.  Frost did not consent to the sale to Awesome on November 18, 2009.  Frost, in the proper exercise of their rights under section 363(f), did not state their decision to consent or not consent to a sale to Awesome until the December 7, 2009 hearing after Awesome further amended the assets purchase agreement that accompanied its bid.

12.      As a result the necessity for a consent from Frost and uncertainty whether Awesome would be the assignee of the unexpired leases of locations at which restaurants were operated, while Awesome was the highest bidder, the Movants could not treat Awesome as the certain purchaser of the Movants assets.

13.     On November 19, 2009, the Movants, in accordance with the Second Bid Procedures Order, filed a notice that Awesome, an entity affiliated with CiCi Enterprises, LP was the high bidder.

14.     Awesome did not provide the Movants with any evidence to prove that Awesome could provide adequate assurance of future performance under the unexpired leases that Awesome's bid required be assumed by the Movants and assigned to Awesome.[1]  Accordingly, the Movants could not proceed with the sale motion and orally requested a continuance of the hearing on the sales portion of the Second Bid Procedures Motion.

15.     By separate pleading the Movants will withdraw the Second Bid Procedures Motion and will not seek a setting on a hearing on the continuance that was orally requested and granted by this Court.

### Post December 7 Sale Efforts

16.     The Movants determined that the processes previously used to attempt to sell their assets: the filing of a motion to approve the process of a public auction, allowing submission of modified asset purchase agreements, the conduct of a public auction and a sales hearing was no longer the best method to maximize the sale of the assets of the Movants.  The Movants determined, based in part on the Movants' interpretation of the desires of Frost and the Movants' best guess of conditions under which Frost would consent to a sale of the assets of the Movants, that the hearing on the approval of a sale of the assets of the Movants should occur before the end of January, 2010.  The prior procedures would not allow this to happen.

---

[1]     Other issues existed that may have prevented the sales hearing from proceeding, but the Movants believe that those matters are not relevant to this Motion and have been omitted to avoid the injection of irrelevant, disputed and possibly inflammatory matters.

17.     Movants also determined that the potential purchasers of the Movants' assets already knew that the Movants' assets were for sale and had conducted diligence with respect to the assets.

18.     Movants determined that a one-time, sealed bid, submitted by a deadline with an asset purchase agreement that could not be modified in substantial ways was the most efficient means to attempt to sell the assets of the Movants for a higher price than prices previously offered and to meet the terms that the Movants believe would obtain consent from Frost to the sale.

19.     The Movants further believed that agreements reached between October 7, 2009, and December 7, 2009, by and between Frost, CiCi, the Movants (and affiliated debtors), and certain nondebtor guarantors of obligations of the Movants to CiCi and Frost made the sealed bid procedure the best means to sell the assets of the Movants.  These agreements have been reduced to writing and are subject to a Rule 9019 Motion (the "9019 Motion") that is set for hearing before this Court on January 5, 2010.  As related to bidders, these agreements provided certainty, in the form of a "hard cap" on amounts that must be expended, with respect to the capital expenditures that CiCi would require of a purchaser under the franchise agreements.  The agreements, with respect to the "hard cap" could be transferred to the bidders.  The certainty provided by the 9019 Motion is substantial.  Being able to rely on agreements filed of record with this Court, reduced risk for all bidders and potential bidders.

20.     Between December 7, 2009, and December 17, 2009, the Movants engaged in various discussions or negotiations with the entities who were qualified bidders at the November 18, 2009 auction and other entities who had not qualified to bid at the November 18, 2009

auction, but who had been interested in the assets of the Movants in the past. All but one of these entities had previously seen the asset purchase agreements proposed by the Movants.

21.     On December 17, 2009, the Movants transmitted emails to counsel for the persons or entities who remained interested in bidding for the assets of the Movants. The emails contained an asset purchase agreement; a redlined version of the asset purchase agreement comparing the December 17, 2009, asset purchase agreement to the version attached to the Second Bid Procedures Order; and instructions that bids were to be submitted to the Movants by noon on December 22, 2009, along with a deposit of five percent (5%) of the bid amount and an executed version of the asset purchase agreement.

22.     Between December 17, 2009 and December 22, 2009, the Movants received comments to the asset purchase agreement and made minor changes to the form of the asset purchase agreement. On December 20, 2009, the Movants transmitted an asset purchase agreement and a redlined comparison version of the document to those person who had received the initial package.

23.     On December 22, 2009, the Movants received bids, including bids from two entities that were not qualified bidders at the November 18, 2009, auction.

**Highest Offer and Request for Sale and Assumption and Assignment of Contracts and Leases**

24.     The highest bid was submitted by McMullin Investments, LP (the "McMullin Bid"). The entities that submitted the McMullin Bid had previously communicated with the Movants under Caymus Partners and had appeared at the December 7, 2009 hearing as Caymus Partners[2]. The McMullin Bid was for $12,650,000. The asset purchase agreement submitted with the McMullin Bid contained two changes to the Movants' asset purchase agreement:

McMullin wanted the right to assign the contract before the closing and McMullin wanted the right to extend the closing date to February 22, 2009, if an additional $100,000 was added to the deposit. Both changes were acceptable to the Movants.  A copy of the asset purchase agreement signed by McMullin is attached hereto and incorporated herein as Exhibit A.

25.     Movants request authorization to sell their assets to McMullin or McMullin's assignee pursuant to the terms of Exhibit A under 11 U.S.C. § 363(f).

26.     Movants request that Movants be allowed to assume all executory contracts between the Movants and CiCi or affiliates of CiCi and assign those contracts to McMullin or its assignee.  The cure of the defaults under such contracts has been agreed to by CiCi, Frost and the Debtors, but is subject to this Court's approval of the 9019 Motion.

27.     Movants request that Movants be allowed to assume all unexpired leases of real property at which Movants (other than Winmar, because Winmar has assume all unexpired leases of real property at which Winmar operates restaurants) operate restaurants and assign all such leases (including unexpired leases of real property at which Winmar operates restaurants) to McMullin or McMullin's assignee.  The cure amounts that must be paid to assume such leases have been stated by the nondebtor parties to such leases in pleadings filed with this Court on or before September 2, 2009. The cure amounts will be paid as filed or the Movants will object to the claimed cure amounts and escrow sufficient funds to pay the asserted cure amounts.  The assumption and assignment of such leases is authorized by 11 U.S.C. §§365(b) and (f).

28.     Pursuant to Federal Rule of Bankruptcy Procedure 6004, a sale of a debtor's assets or other property may be accomplished through public or private auction.   For the reasons stated herein, the Movants believe that the sealed bid auction process used by the Movants was the best

---

[2]              In  prior discussions wit the Movants Caymus had always indicated that an entity other than Caymus would probably bid the purchaser.

means to maximize the bids for the Movants' assets. This procedure resulted in competitive bids.

29. The sale process was conducted in good faith and all discussion between the Movants and all prospective bidders were at arms length and in good faith.

30. The Movants request that this Court waive the 10 day stay of any order authorizing the sale requested by this Motion.

WHEREFORE, the Movants respectfully request that the Court enter an order (approving the sale of their assets to McMullin or McMullin's assignee pursuant to 11 U.S.C. §363(f) free and clear of liens, claims or encumbrances; approve the assumption of those executory contracts between the Movants and CiCi and the assignment of those contracts to McMullin or McMullin's assignees; approve the assumption of unexpired leases of real property at which the Movants other than Winmar operate restaurants and the assignment of such leases to McMullin or McMullin's assignee; the assignment of all unexpired leases of real property at which Winmar operates restaurants to McMullin or McMullin's assignee; and such other and further relief as is just and proper.

Respectfully submitted,

/s/ Richard W. Ward
Richard W. Ward
Texas Bar No. 20846350
6860 N. Dallas Parkway, Suite 200
Plano, TX 75024
Telephone: 214-220-2402
Facsimile: 972-499-7240
Email: rwward@airmail.net
Attorney for the Debtors-in-possession

**Certificate of Service**

I certify that this motion will be served on all parties in interest in this case on December 29, 2009. After service a detailed certificate will be filed listing all persons served.

/s/ Richard W. Ward
Richard W. Ward